UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CURTIS PEACE,

        Plaintiff,   :

   v.                      Case No. 2:24-cv-4237
                            Chief Judge Sarah D. Morrison
                            Magistrate Judge Chelsey M.
                            Vascura

WALTER CARTER, JR., *et al.*,   :

        Defendants.

## OPINION AND ORDER

Curtis Peace brings this action against The Ohio State University President Walter Carter, Jr. and several OSU police officers for alleged violations of federal and state law arising from his arrest on OSU's campus. This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 17.)

For the reasons below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I.    BACKGROUND

The following background draws from the allegations in the Complaint; all well-pleaded factual allegations in the Complaint are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

On the morning of April 25, 2024, protestors against Israel's actions in Gaza and OSU's involvement with Israel gathered at the South Oval (a space on OSU's

campus in front of the student union) and set up camping equipment. (Am. Compl., ECF No. 15, ¶¶ 16, 20.) At approximately 9:30 a.m., OSU police ordered that all camping equipment be removed from the South Oval and the protesters complied. (*Id.* ¶¶ 21, 23.) Subsequently, OSU Police Division Deputy Chiefs Eric Whiteside and Dennis Jeffrey determined that the protest violated OSU's University Space Rules ("USR") because it was a continuation of an event that had improper tents. (*Id.* ¶ 24.) Later that evening, another group of protestors attempted to construct encampments on the South Oval. (*Id.* ¶ 48.)

    A.    **The University Space Rules**

The USR provide that the "[u]se of University space is reserved for the direct and indirect support of the University's teaching, research, and service missions, the University's administrative functions, and students' campus-life activities," with access or use limited "as may be necessary to provide for the orderly conduct of" those University functions. (*Id.* ¶ 55.) The USR permit large-scale events to be registered by student organizations and others, including non-affiliates, but OSU "may require reasonable time, place and manner limitations be placed on usage to ensure that the usage does not disrupt the University's mission, administrative functions, or other campus-life activities." (*Id.* ¶ 56.) OSU preserves "its sole discretion and subject to change based upon the operational needs of the University" to designate closed spaces. (*Id.* ¶ 57.)

Under ¶ D.5 of the USR, "Equipment, Signs and Structures" may not be "attached or affixed" without prior approval, while ¶ D.6 prohibits setting up "tents

2

or other temporary structures requiring staking" without prior approval and subject to size restrictions and Ohio Department of Commerce permitting. (*Id.* ¶ 60.)

Per ¶ F of the USR, disruption "in any form" of "University business" is forbidden, and, "[w]hen enforcing these rules, an official or employee authorized to maintain order on the campus or facility should make a reasonable attempt to warn and advise registered student organizations, students, faculty, staff and non-affiliates to cease the prohibited conduct or activity before citing and/or arresting the individual for violation of these rules, except where the conduct violating these rules reasonably appears to create a threat to or endanger health, safety or property." (*Id.* ¶ 61.)

### B. Mr. Peace's Arrest

Mr. Peace graduated from OSU in 2021. (*Id.* ¶ 7.) He arrived at the South Oval at approximately 9:57 a.m. on April 25, 2024, and joined with protestors who were expressing their criticism of OSU and Israel in a peaceful and nondisruptive manner. (*Id.* ¶ 22.) By the time he arrived, protesters had already begun to tear down the encampment; they finished within a few minutes of his arrival. (*Id.* ¶ 23.)

Within ten minutes of Mr. Peace's arrival, OSU police officers, including Deputy Chief Whiteside, approached the protesters with whom Mr. Peace was standing. (*Id.* ¶ 25.) While Mr. Peace filmed, Deputy Chief Whiteside told them that the University had determined that their protest was a continuation of an event that had violated the USR by having tents and that the protestors needed to disperse. (*Id.* ¶ 26.) At no point did Deputy Chief Whiteside tell them to leave the

OSU campus or the South Oval. (*Id.* ¶¶ 27, 28.) The protestors dispersed and people not involved in the protest continued to use the South Oval as normal. (*Id.* ¶¶ 30, 31.)

Mr. Peace walked approximately 150 feet to the south of the original encampment site where he began filming an "arrest squad" of OSU officers under the command of Lt. Alan Horujko. (*Id.* ¶¶ 32–34.) Around 10:17 a.m., while Mr. Peace was filming, Lt. Horujko directed two members of the arrest squad to arrest Mr. Peace for criminal trespassing. (*Id.* ¶¶ 34–36.)

Mr. Peace was detained for the rest of the day, incarcerated, and released on bond that evening. (*Id.* ¶¶ 38.) He was charged with criminal trespassing in a complaint signed by Detective Susan Liu but the charge was later dismissed unconditionally. (*Id.* ¶ 40.)

Because of his arrest, Mr. Peace was fired from his job as a contractor for a delivery service and his application to work for another delivery service was denied. (*Id.* ¶ 42.) Mr. Peace intends to peacefully protest on OSU's campus again. (*Id.* ¶ 7.)

    C.    **President Carter's Communications**

On April 29, 2024, President Carter emailed the campus community about the April 25, 2024 arrests; in that email, he explained that the protestors involved in creating an encampment had been repeatedly notified throughout the day that they were in violation of the USR. (Am. Compl. ¶¶ 44–45, 47–49.) His email stated, among other things, that "I take my responsibilities very seriously and am

4

accountable for outcomes. Arrests are not an action that I or any member of the administration take lightly." (*Id.* ¶ 44.)

D.  **The May 2024 Protests**

On May 1, 2024, OSU permitted, without any arrests, more than 700 protesters on the South Oval who were chanting slogans, engaging in Muslim prayers, and waving Palestinian flags or posters. (Am. Compl. ¶ 64.)

II. **STANDARD OF REVIEW**

Defendants move to dismiss Mr. Peace's Claims under Rules 12(b)(1) and 12(b)(6).

Before a court may determine whether a plaintiff has failed to state a claim upon which relief may be granted, it must first find that it has subject matter jurisdiction. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 666–67 (S.D. Ohio 2019) (Marbley, J.) (citation omitted). Rule 12(b)(1) provides that the defendant may move to dismiss based on a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The standard of review of a motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Only a facial attack, which "questions merely the sufficiency of the pleading," is present here. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack requires the district court to "take[ ] the allegations in the complaint as true." *Id.* The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton*

5

*Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In reviewing a motion to dismiss, the Court "construe[s] the complaint

6

in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

**III. ANALYSIS**

Mr. Peace asserts six claims for declaratory, injunctive, and monetary relief: false arrest under Ohio law and the Fourth Amendment (Claims 1 and 2, respectively), malicious prosecution under Ohio law and the Fourth Amendment (Claims 3 and 4, respectively), an as-applied First Amendment challenge to the USR (Claim 5), and First Amendment retaliatory arrest (Claim 6). His constitutional claims are brought pursuant to 42 U.S.C. § 1983. Defendants move to dismiss all of his claims.

### A. Mr. Peace lacks Article III standing to seek declaratory or injunctive relief.[1]

Mr. Peace seeks declaratory and injunctive relief, including an injunction prohibiting Defendants from enforcing the USR to close the South Oval at Defendants' discretion. (Am. Compl., PAGEID # 133.) The Court finds he lacks Article III standing for this relief.

---

[1] Although neither party has briefed Article III standing, both have briefed whether Mr. Peace satisfies the *Ex parte Young* exception to Eleventh Amendment immunity as to his claims for prospective relief, including the requirement that he allege an ongoing or imminent violation of his rights. "[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy this element of *Ex parte Young*." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). Thus, in its *sua sponte* Article III standing analysis, the Court will consider the parties' arguments on the imminent or ongoing injury element of the *Ex parte Young* exception.

7

Pursuant to Article III of the United States Constitution, standing is necessary to the exercise of jurisdiction and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—[p]laintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–39 (2016)).

Injury is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The threat of future harm can satisfy this requirement as long as there is a 'substantial risk' that the harm will occur" but "'[a]llegations of *possible* future injury' are not sufficient." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409, 414 n.5 (2013)).

"'[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). "[T]he type of harm alleged impacts the available relief." *Simpson-Vlach v.*

8

*Michigan Dep't of Educ.*, No. 22-1724, 2023 WL 3347497, at *4 (6th Cir. May 10, 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)); *Kanuszewski*, 927 F.3d at 406). "While allegations of past injury permit a plaintiff to seek compensatory relief, allegations of ongoing or future harm permit a plaintiff to seek declaratory or injunctive relief." *Id.* (citing *Kanuszewski*, 927 F.3d at 406; *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)).

Mr. Peace has failed to plead ongoing or a threat of future harm to him flowing from Defendants' enforcement of the USR. Although he says that he intends to participate in future protests on the South Oval, he lacks a reasonable fear of future arrest because he alleges that Defendants have since permitted large and expressive protests on the South Oval without any arrests.

Mr. Peace argues that Defendants' likelihood of quelling future peaceful protests is "hardly speculative," citing general pressure on university leaders from executive orders, press statements, and congressional investigations. (Pl.'s Resp. ECF No. 18, PAGEID # 181–83.) But he fails to explain how this pressure increases the likelihood of Defendants enforcing the USR against *his* expressive activity on the South Oval in the future, especially where Defendants have since allowed protests on the South Oval without incident.

Since Mr. Peace has failed to sufficiently allege an ongoing or future injury, he lacks standing to seek injunctive or declaratory relief.

Accordingly, his Claims are **DISMISSED** to the extent that he seeks declaratory and injunctive relief.

### B. Eleventh Amendment immunity bars Mr. Peace's Claims against Defendants in their official capacities.

"Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'" *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). This immunity extends to claims filed against state officers or employees in their official capacities, as those suits are "'no different from a suit against the State itself.'" *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 654 (S.D. Ohio 2016) (Graham, J.) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "A suit against OSU is the same as a suit against Ohio because OSU, like Ohio's other public universities, qualifies as an arm of the state." *Id.* (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)). Defendants, as OSU officials and employees, are thus immune to Mr. Peace's Claims in their official capacities.

Mr. Peace does not dispute that Eleventh Amendment immunity applies to Defendants, but argues that the *Ex parte Young* exception to such immunity allows him to bring his claims for prospective injunctive relief against them in their official capacities. As discussed above, however, he lacks standing to seek such relief.

Accordingly, Mr. Peace's Claims against Defendants in their official capacities are **DISMISSED**.

### C. The Court lacks jurisdiction over Mr. Peace's state-law claims (Claims 1 and 3).

Defendants argue that they are also immune in their individual capacities under Ohio Rev. Code. § 2743.02(F) and Ohio Rev. Code § 9.86 from Claims 1 and 3.

Ohio law grants civil immunity to state officers and employees in their individual capacities unless the officer's or employee's actions were "manifestly outside the scope of his employment or official responsibilities" or "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 9.86. Ohio law mandates that the determination of whether a state employee was acting within the scope of his employment is exclusively the province of the Ohio Court of Claims. Ohio Rev. Code. § 2743.02(F).

"Under Ohio law, then, state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). In other words, a federal court may not exercise pendent jurisdiction over state claims regarding the individual liability of an "Ohio state employee . . . unless and until the Ohio Court of Claims determines he is not entitled to immunity." *Powell v. Morris*, 184 F.R.D. 591, 596–97 (S.D. Ohio 1998) (Marbley, J.). The Court thus lacks jurisdiction over Claims 1 and 3 against Defendants in their individual capacities.

Accordingly, Claims 1 and 3 against Defendants in their individual capacities are **DISMISSED**.

### D. Mr. Peace's § 1983 Claims (Claims 2, 4, 5, and 6)

#### 1. Mr. Peace's Complaint fails to plead the personal involvement of certain Defendants for certain claims.

Defendants argue that Mr. Peace failed to plead the requisite personal involvement of certain Defendants for some or all of his § 1983 Claims (Claims 2, 4, 5, and 6).

To hold an individual defendant liable under § 1983, a plaintiff must allege "personal involvement" in the alleged unconstitutional conduct. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (personal involvement is required for personal liability). Section 1983 does not "incorporate doctrines of vicarious liability[,]" so a defendant is not automatically liable for the acts of those they supervise. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Rather, to incur liability, a defendant must have directly participated in or encouraged an unconstitutional act. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Conclusory allegations of unconstitutional conduct are insufficient to state a § 1983 claim; a complaint must contain either direct or inferential factual allegations as to each individual defendant.

#### a) President Carter

Defendants argue Mr. Peace failed to plead the requisite personal involvement of President Carter for his § 1983 claims.

Mr. Peace's only relevant allegation about President Carter is that he sent a campus-wide email critical of the encampment that protestors set up at the South

Oval. This is insufficient to establish that President Carter took any action to cause or implicitly approve of the alleged unlawful conduct towards Mr. Peace.

Mr. Peace attempts to liken this case to *Cooperrider v. Woods*, 127 F.4th 1019, 1039 (6th Cir. 2025). There, the plaintiffs were allowed to proceed on a First Amendment retaliation claim because the complaint contained well-pled factual allegations that the defendants had "directly addressed the speech of Plaintiffs" in public statements and in internal e-mails suggesting "a concerted effort to deprive [the plaintiffs] of their alcohol licenses[.]" *Id.* at 1038–39. But he has not alleged that President Carter made any statements directly addressing *Mr. Peace's* expressive conduct, nor has he alleged facts suggesting President Carter approved, authorized, or knowingly acquiesced to the alleged violation of Mr. Peace's constitutional rights.

Accordingly, Claims 2, 4, 5, and 6 against President Carter in his individual capacity are **DISMISSED**.

### b) Detective Liu

Defendants also argue Mr. Peace failed to plead the requisite personal involvement of Detective Liu.

The only allegation about Detective Liu is that she signed the complaint instituting criminal trespass charges against Mr. Peace *after* other officers arrested him. And as to Mr. Peace's malicious prosecution claim, he does not allege that Detective Liu had any role in the decision to prosecute him or that the criminal complaint contained false information. "[A] police officer cannot be liable for Fourth

13

Amendment malicious prosecution when [s]he did not make the decision to bring charges, as long as the information [s]he submitted to the prosecutor is truthful." *Kinkus v. Vill. of Yorkville, Ohio*, 289 F. App'x 86, 91 (6th Cir. 2008); *cf. Sykes v. Anderson*, 625 F.3d 294, 317 (6th Cir. 2010). Thus, Mr. Peace fails to allege the requisite personal involvement by Detective Liu.

Claims 2, 4, 5, and 6 against Detective Liu in her individual capacity are **DISMISSED**.

### c) Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside

Finally, Defendants argue Mr. Peace failed to sufficiently plead the personal involvement of Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside for Claim 4. Mr. Peace does not allege that any of the three officers made the decision to prosecute him or made "'knowing misstatements ... to the prosecutor'" or exerted "'pressure or influence, over an individual who [] made the decision to prosecute[.]" *Sykes*, 625 F.3d at 316 (citation omitted). Thus, Mr. Peace failed to allege the requisite personal involvement for Claim 4 as to Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside.

It is not clear whether Defendants are challenging the sufficiency of Mr. Peace's Amended Complaint as to the personal involvement of Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside for Claims 2, 5, and 6. (*See* Defs.' Mot., PAGEID # 146–47; Defs.' Reply, PAGEID # 193.) To the extent Defendants' filings could be construed to raise such a challenge, Mr. Peace sufficiency pleaded that Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside "implicitly authorized, approved

14

or knowingly acquiesced" in the alleged unconstitutional conduct giving rise to these three Claims. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citation omitted). He alleges that Deputy Chiefs Jeffrey and Whiteside determined that the protestors who remained near the morning encampment site (including Mr. Peace) were violating the USR, that Deputy Chief Whiteside told Mr. Peace and the other protestors to disperse, and that Lt. Horujko directed the OSU officers to arrest Mr. Peace.

Claim 4 is **DISMISSED** against Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside in their individual capacities.

> 2. **Mr. Peace sufficiently alleged facts in support Claims 2, 5, and 6 as to Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside.**

### a) Claim 2: Fourth Amendment False Arrest

To succeed on a wrongful arrest claim under § 1983, a plaintiff must prove that the police lacked probable cause. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). A probable-cause determination is based on the "totality of the circumstances" and must consider "both the inculpatory *and* exculpatory evidence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). The determination must include " 'facts

15

and circumstances establishing a statutorily legitimated affirmative justification for the suspected criminal act.'" *Fridley*, 291 F.3d at 873 (quoting *Painter*, 185 F.3d at 570). Only if "a reasonable police officer would *conclusively know* that an investigative target's behavior is protected by a legally cognizable affirmative defense" does the officer lack a legal foundation for arrest. *Id.* (citing *Painter*, 185 F.3d at 571 n.21). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Mr. Peace was arrested for criminal trespass. "In Ohio, an individual commits criminal trespass by '[k]nowingly enter[ing] or remain[ing] on the land or premises of another' absent 'privilege to do so.'" *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting Ohio Rev. Code § 2911.21(A)(1)). A "privilege" is "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." Ohio Rev. Code § 2901.01(A)(12). Generally, a person has a privilege to enter and be upon the public areas of public property but a public official or agency that owns or controls public property can revoke that general privilege. *Cleveland v. Dickerson*, 60 N.E.3d 686, 691 (Ohio Ct. App. 2016). Even so, in the context of public property, "a criminal trespass may be inappropriate where, subject to certain time, place, and manner of use restrictions, the defendant is lawfully exercising his or her First Amendment rights to free speech and peaceful assembly." *Id.* at 692.

Defendants argue that the arresting OSU officers had probable cause to arrest Mr. Peace for criminal trespass because "(1) law enforcement officers asked [him] to vacate the area near the planned encampment site and (2) [he] was arrested thereafter while still in the area." (Defs.' Mot., PAGEID # 147.) But, according to the Amended Complaint, Deputy Chief Whiteside only told the protestors at the morning encampment site (including Mr. Peace) to "disperse" and "and did not at any time tell them they needed to leave the Ohio State Campus or the South Oval." (Am. Compl. ¶ 27.) Mr. Peace alleges he was arrested approximately 150 feet away from the encampment site and there are no allegations that OSU officers told him to leave after his dispersal from the morning encampment site. While the evidence may subsequently reveal Defendants' factual arguments, Mr. Peace has sufficiently pleaded facts suggesting that the OSU officers lacked probable cause to arrest him.

Accordingly, Defendants' Motion is **DENIED** as to Claim 2 against Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside in their individual capacities.

### b) Claim 5: First Amendment As-Applied Challenge to the USR

Mr. Peace alleges Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside violated his First Amendment free speech rights when they invoked the USR to close the South Oval to his expressive and associational conduct.[2] The viability of a

---

[2] Mr. Peace also argues the USR function as a "prior restraint" because "[a]s applied, the USR grants sole and total discretion to OSU to declare peaceful and nondisruptive expressive and associational activity off limits on the South Oval." (Am. Compl. ¶ 63.) But "a prior restraint is an administrative or judicial order that

17

First Amendment claim depends on three inquiries: (1) whether the speech is protected; (2) "the nature of the forum" in which the speech occurs; and (3) whether the government's restriction on speech satisfies the relevant forum's associated constitutional standard. *Hartman v. Thompson*, 931 F.3d 471, 478 (6th Cir. 2019) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985); *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 559 (6th Cir. 2007)). Defendants challenge the sufficiency of Mr. Peace's pleadings only as to the first inquiry. (*See* Reply, PAGEID # 193.)

"[T]he First Amendment rights of speech and association extend to the campuses of state universities." *Kincaid v. Gibson*, 236 F.3d 342, 347 (6th Cir. 2001) (quoting *Widmar v. Vincent*, 454 U.S. 263, 268–69 (1981)). Even though the Supreme Court and Sixth Circuit have not determined whether the public enjoys a First Amendment right to record police activities in public places, "[s]even circuit courts have held the public has some right to film police." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 661 (S.D. Ohio 2023) (Cole, J.) (collecting cases). Based on the body of persuasive authority, this Court "agree[d] that the First Amendment protects the public's right to film police and other government agents subject to reasonable restrictions." *Id.*

---

forbids protected speech in advance. An action taken after the speech is expressed, like a punishment for disfavored speech, is not a prior restraint." *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) (cleaned up) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)). To this extent, the Claim is **DISMISSED**.

Defendants provide no basis to find as a matter of law that Mr. Peace's alleged conduct filming OSU police officers on the South Oval does not enjoy First Amendment protection. Instead, they argue that "there is no First Amendment right to set up an encampment on public property." (Defs.' Reply, PAGEID # 193 (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 297–98 (1984).) That is not what Mr. Peace alleges occurred. He alleges that he was merely standing with the protestors at the morning encampment site. He claims that the original encampment was taken down shortly after his arrival and that he and the other protestors dispersed when ordered to do so by OSU police. He was standing 150 feet away from the original encampment site at the time of his arrest. While a second encampment was attempted later that evening, that second encampment did not begin until well after his arrest. Assuming these allegations are true, whether the First Amendment provides a right to set up encampments is immaterial to Mr. Peace's conduct.

The Court **DENIES** Defendants' Motion as to Claim 5 against Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside in their individual capacities.

### c) Claim 6: First Amendment Retaliatory Arrest

A plaintiff alleging First Amendment retaliation must show that (1) he engaged in a constitutionally protected activity; (2) the officers' adverse actions caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing that activity, and (3) the officers were motivated, at least in part, by his exercise of his constitutional rights. *Novak v. City of Parma*, 932 F.3d 421,

19

427 (6th Cir. 2019). Further, "to bring a First Amendment retaliatory arrest claim, a plaintiff must generally show that there was no probable cause for the arrest." *Id.* at 430. Defendants argue Claim 6 fails because Mr. Peace's conduct was not constitutionally protected and the OSU officers had probable cause to arrest him. For the reasons discussed above on Claims 2 and 5, the Court likewise finds Mr. Peace has stated Claim 6.

Accordingly, Defendants' Motion is **DENIED** as to Claim 6 against Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside in their individual capacities.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion (ECF No. 17) is **DENIED** as to Claims 2, 5, and 6 against Lt. Horujko and Deputy Chiefs Jeffrey and Whiteside in their individual capacities. In all other respects, the Motion is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**